## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST )
FROM RUSSIA )
IN THE MATTER OF ) Misc. No. 07-
O.V. LOTOTSKY )

### GOVERNMENT'S MEMORANDUM OF LAW
### IN SUPPORT OF APPLICATION FOR ORDER

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a  letter of request from Russia. A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Russian authorities who are investigating a case of alleged fraud.

EVIDENCE SOUGHT:

The Russian authorities seek information about a company that may reside in this District and the Delaware Secretary of State's Office. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the

court.    By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, " (t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." In Re Letter of Request from the Crown Prosecution Services of the United Kingdom, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in Russia and

hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled ex parte, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY:

David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE    19801
(302) 573-6277

Dated: 3/13/07

**Prosecutor General's Office**
**of the Russian Federation**

15A Bolshaya Dmitrovka
Moscow, GSP-3, 125993, Russia

_18_ .09.2006   Our ref. 35/2-2465-06
Your ref.: _____

**Ms. Mary Ellen Warlow**
**Director**
Office of International Affairs
US Department of Justice

1301 New York Ave. NW
Washington, D.C. 20005

**Dear Ms. Warlow,**

The Prosecutor's General Office of the Russian Federation presents its compliments to the Department of Justice of the United States of America and has to inform you that pursuant to the Treaty on Mutual Legal Assistance in Criminal Matters of 06/17/99 we have the honour to request legal assistance in criminal case No. 26240, instituted under art.159, part 3 (fraud) of the Criminal Code of the Russian Federation.

The performance of the investigative actions in the territory of the United States of America is necessary in order to ensure comprehensive preliminary inquiry.

Please be advised that procedural criminal law of the Russian Federation envisages limited terms of the prejudicial investigation in criminal matters. Procedural terms violation may adversely affect the results of criminal investigation and bringing to justice the accused.

In view of the above, please take all necessary measures to execute the above-mentioned request as soon as possible prior to 01.01.2007 and forward the results, or inform of the reasons why it cannot be executed, to Main Department for International Legal Cooperation, Prosecutor General's Office of the Russian Federation.

The Prosecutor General's Office of the Russian Federation guarantees that the information and documents obtained in the course of execution of the request will be used for the purposes of the investigation only and will not cause any harm to the sovereignty, security and public order of the United States of America.

The Prosecutor General's Office of the Russian Federation thanks you in advance for your cooperation and confirms its readiness to provide similar or other kind of legal assistance in criminal matters to the law-enforcement agencies of the United States of America.

Enclosure: on 44 pages.

Head
Main Department for International Legal Cooperation                    A.S. Kupriyanov

Translated from Russian

MINISTRY OF INTERNAL AFFAIRES
OF THE RUSSIAN FEDERATION
(MIA of Russia)
The Chief Department of
MINISTRY OF INTERNAL AFFAIRES OF RUSSIA
In the Central federal district
(CD MIA of Russia in CFD)

To competent bodies of
The United States of America

Investigative part
Attached to CD MIA of Russia in CFD

"___" _____ 2006 № 29/66-____
127254, Moscow, 8a Rustaveli Street
phone: 619-80-11 fax: 619-80-45

APPLICATION
For legal assistance in view of the criminal case investigation

The Russian Federation

The city of Moscow                                                   July 24, 2006

The Investigative part attached to the Chief Department of MIA of Russia in the Central federal district, showing its great respect to competent bodies of the United States of America and on the basis of the Agreement between the Russian Federation and the United States of America "About mutual and legal assistance in criminal cases investigation" of June 17, 1999, applies to you with the present inquiry about legal assistance giving in connection with the investigation of the criminal case № 26240 (hereinafter we ask you to refer to this number).

The Investigative part attached to the Chief Department of MIA of Russia in the Central federal district assures competent bodies of the United States of America that the present inquiry about giving of international legal assistance to the law machinery of the Russian Federation in connection with the investigated criminal case has been made in full agreement with the Russian legislation, by the authorized body within the limits of plenary powers given to him.

Execution of the investigative actions on the territory of the United States of America is necessary for guaranteeing of completeness, fullness and objectivity of preliminary investigation and further examination of the present criminal case ad litem.

The Investigative part attached to the Chief Department of MIA of Russia in the Central federal district guarantees to competent bodies of the United States of America that all intelligence and documents, received as a result of the present application execution, will be used only in the criminal case preliminary investigation, evidence collection for the criminal case and also in the court examination but they won't be used for political or any other purposes as well as against the citizens of your country.

At present time the Investigative part attached to the Chief Department of MIA of Russia in the Central federal district carries out the investigation of the criminal case № 26240, concerning O.V. Lototsky and M.V. Chekanov that was instituted on February 2, 2005 by the Investigative part of the Investigation department attached to the Internal Affaires Department of the Central Administrative district in the city of Moscow according to the signs of the crime, contemplated by the Article 159 part 3 of the Criminal Code of the Russian Federation.

**Extract from the Criminal Code of the Russian Federation**

(The  Criminal Code of the Russian Federation (hereinafter CC RF) adopted by the State Duma on May 24, 1996, approved by the Federation Council on June 5, 1996, signed by the President of the Russian Federation on June 13, 1996, became valid from January 1, 1997 )

**Article 159 of the Criminal Code of the Russian Federation.** Swindling

1. Swindling, that is, the stealing of other people's property or the acquisition of the right to other people's property by fraud or breach of trust, -

shall be punishable by a fine in the amount up to 120 thousand roubles, or in the amount of the wage or salary, or any other income of the convicted person for a period of up to one year, or by compulsory works for a term of up to 180 hours, or by corrective labour for a term of six months to one year, or by arrest for a term of two to four months, or by deprivation of liberty for a term of up to two years.

2. Swindling committed by a group of persons in a preliminary conspiracy, as well as with the infliction of considerable damage on an individual -

shall be punishable by a fine in the amount up 300 thousand roubles, or in an amount of the wage or salary, or any other income of the convicted person for a period up to two years, or by compulsory works for a term of 180 to 240 hours, or by corrective labour for a term of one year to two years, or by deprivation of liberty for a term up to five years.

3. Swindling committed by a person through his official position, as well as on a large scale -

shall be punishable by a fine in an amount of 100 thousand to 500 thousand roubles or in the amount of the wage or salary, or any other income of the convicted person for a period of one year to three years or by deprivation of liberty for a term of two to six years, with or without a fine in an amount of up to 10 thousand roubles or in the amount of the wage or salary, or any other income of the convicted person, for a period up to one month.

4. Swindling committed by an organized group or on an especially large scale -

shall be punishable by deprivation of liberty for a term of five to ten years with or without a fine in the amount of up to one million roubles or in the amount of the wage or salary, or any other income of the convicted person for a period of up to three years.

(The Article in the reduction of Federal law of December 8, 2003 № 162-F)

**Note.** Stealing shall be considered as an illegal gratuitous seizure of other people's property, done toward the selfish end, and (or) appropriation of other people's property by guilty or other persons, with the damage, done to proprietor or any other owner of the property.

The considerable damage, done to individual, in the articles of the present Part is determined with taking into consideration his property status but it can't be less than two thousand five hundred roubles

A large scale in the articles of the present Part is considered as value of property more than two hundred fifty thousand roubles and an especially large scale - one million of roubles.

**FACTUAL BACKGROUND:**

Frank Newman, the citizen of the United States of America is the president of the Closed Joint Stock Company "Abitare"(the city of Moscow), as well as the founder of the foreign company "Cross Ocean Trading LTD" that is
- the owner of 70 % of the stock of the Closed JSC "Abitare all for house"(the city of Moscow), the Closed JSC "Abitare roundhouse"(the city of Moscow).

More than that Frank Newman is the co-founder of the corporation "AM-TAK Importes, Inc." that is the owner of
- 70 % of the stock of the Closed JSC "Abitare";
- 70 % of the stock of Limited Liability Companies: LLC "T.S.Garp"(the city of Moscow), LLC "Mitchell-B"(the city of Moscow), LLC "PTP "Lotos"(the city of Moscow).

Also F. Newman has in his possession 55% of the stock of the foreign companies "Cross Ocean Trading" and "AM-TAK Importes, Inc", 45 % of the stock of these companies are possessed by another citizen of the United States of America Steven Tatik.

The company "Contral LLC" and LLC "M-Light"(the city of Moscow) each possesses 15 % of the stock of the Closed JSC "Abitare all for house" and the Closed JSC "Abitare roundhouse", also they are the owners of 15 per cents of the stock of LLC "T.S.Garp", LLC "Mitchell-B", LLC "PTP "Lotos".

In Russia the Closed JSC "Abitare", Closed JSC "Abitare all for house", the Closed JSC "Abitare roundhouse", LLC "T.S.Garp", LLC "Mitchell-B", LLC "PTP "Lotos" were managed by O.V. Lototsky and M.V. Chekanov.

On January 21, 2004 Frank Newman gave the power of attorney 77 NP 3434241 to O.V. Lototsky to represent interests of the Closed JSC "Abitare" and to execute all necessary actions on behalf of the company, namely: to manage the property of the company, including its monetary funds, in the limits, determined by the Charter and the stockholders' meeting, to make transactions on behalf of the company or authorize other persons to do it and to organize their execution.

On November 24, 2004, during the extraordinary general meeting of the stockholders of the Closed JSC "Abitare" the decision was made to terminate the validity of the powers of attorney, given to O.V. Lototsky and M.V. Chekanov, to dismiss Lototsky from the position of the vice-president of the company.

On December 23, 2004 the company "Leyton Commerce LTD" in the person of R.R. Taktashev, the director-general, made the purchase and sale contract № 01/KP with the Closed JSC "Abitare" in the person of O.V. Lototsky, the vice-president, according to which the Closed JSC "Abitare" transferred the merchandise, according to the list, for the sum of 4.600.000 dollars USA. At the same day R.R. Taktashev received the merchandise, being in the storage to the address: 8 Transportnaya Street, the city of Odintsovo, Moscow Region.

On January 12, 2005 according to the merchandise receiving-delivery act to the purchase and sale contract № 01/KP of January 1, 2005 the company "Leyton Commerce LTD" in the person of R.R. Taktashev, the director-general (the purchaser) took from the Closed JSC "Abitare" in the person of O.V. Lototsky, the vice-president (the seller) the merchandise according to the supplement № 1 (specification) to the purchase and sale contract № 01/KP of January 1, 2005.

On March 14, 2005 the Closed JSC "Abitare" was recognized as the sufferer and civil plaintiff and that decision was declared to its representative S.E. Filippov who was re-appointed as the vice-president of the Closed JSC "Abitare" as well as to the director-general of the group of the companies "Abitare" who was given the property, found in the group of the companies "Abitare" and the Closed JSC "Abitare", for accountable keeping.

On June 9, 2005 the judge of the Arbitrage in the city of Moscow, who examined the case according to the suit, brought by LLC "M-light", the company "Contral LLC" against the Closed JSC "Abitare",

made the decision about nullifying of the decision, made on November 24, 2004, during the extraordinary general meeting of the shareholders of the Closed JSC "Abitare".

On October 18, 2005 the resolution of the ninth appellate Arbitrage made no objections to the decision of the Arbitrage in the city of Moscow of June 9, 2005, reclaiming note was left without satisfaction.

## THE ACTIONS REQUIRED

Taking into consideration that execution of some investigative actions on the territory of the United States of America is necessary for fullness, objectivity and completeness of the investigation of the present criminal case, the Investigative part attached to the Chief Department of MIA of Russia in the Central federal district applies to competent bodies of the United States of America for legal assistance giving and asks you:

1.   to request the corresponding bodies about the information, concerning the registration on the territory of the United States of America of the company "Cross Ocean Trading" (address: 125-10 Oueens Boulvard, Kew Gardens, New York 11415); the company "AM-TAK Importes, Inc." (the address: 125-10 Oueens Boulvard, Kew Gardens, New York 11415, USA); the company "Contral LLC"( the address: Suite 606, 1220 N.Market Street, Wilmington, Delaware, New Castle district, USA on April 17, 1998). In the answer for this question we ask you to mention the following:

- date and place of the registration;
- legal and real address, address of its representative and branch offices;
- biographical particulars, contact phones of the founders, managers.

2.   to determine the real location of the citizen of the United States of America – Frank Newman, born on ▮▮▮▮▮▮▮ in ▮▮▮▮▮ (foreign passport series ▮▮▮▮ issued on ▮▮▮▮▮ by Passport Agency Stamford), and to interrogate him as a witness, asking without fail about the following questions:

- Since what time has he been the president of the Closed JSC "Abitare", founder of the company "Cross Ocean Trading" (125-10 Oueens Boulvard, Kew Gardens, New York 11415) and founder of the company "AM-TAK Importes, Inc."(situated to the address: 125-10 Oueens Boulvard, Kew Gardens, New York 11415, USA; registered by the Department of State in New York state, Quins county on June 3, 1991) and in what circumstances did he become the president? What companies were founded by the present ones?
- Is he acquainted with Grigory Leonidovich Rabinovich, what are their relations? In what circumstances did G.L. Rabinovich cease to be the stockholder of the Closed JSC "Abitare" and of other companies?
- What are his (F. Newman) duties and what activities are directly executed by the present society, company and corporation as well as other companies, founded by the company "Cross Ocean Trading" and the corporation "AM-TAK Importers"?
- Who are (were) his representatives as well as the representatives and the directors of the mentioned companies?
- Whether on November 24, 2004 there were extraordinary general meetings of the stockholders of the Closed JSC "Abitare" (supplement № 1) or of other companies? If so then where exactly did they take place, who was the initiator of these meetings and when did it happen, what were the reasons for such meetings and what was the order of the day, who was in charge of the meetings organization, who determined the place of the meetings (why did the meetings, if they really happened, take place in the USA); when and in what way were other stockholders informed and who did it, who made reports of the proceedings and what decisions were made;
- Who possesses the originals of the documents, that reflect the way in which the stockholders' meetings were carried out, and where are they now as well as the documents that compose the stockholders' register system? Whether the Closed JSC "Abitare" and other companies have the registrar?
- Does he know Sergey Evgenievich Filippov, the citizen of the Russian Federation, if so then when and in what circumstances did they get acquainted?

- Whether he gave the power of attorney to S.E. Filippov, if so then where it was drawn, when, where and who exactly transferred it to S.E. Filippov, what is the matter of this power of attorney, what were the reasons of its giving, if there is its copy (or original), could it be presented (supplement № 2)?
- Since when has he known Oleg Vitalievich Lototsky and Marat Vladislavovich Chekanov, what are (were) their positions and their duties? Whether Lototsky and Chekanov were given the powers of attorney, including the right to manage the property of the Closed JSC "Abitare"? If so then when were they given, for what period and who did it ? Whether these powers of attorney were withdrawn, if so then when, in what manner did it happen and who did it?
- Does he know Renat Ryashidovich Taktashev, the citizen of the Russian Federation, if so then when, where and in what circumstances did they get acquainted?
- What does he know about the circumstances in which the Closed JSC "Abitare" in the person of O.V. Lototsky made the contract with the company "Leyton Commerce LTD" in the person of its director-general R.R. Taktashev? When did he get to know about the mentioned contract? Who made the decision about making of that contract? What were the circumstances of that contract execution? How much property, when exactly and for what amount of money was sold, where was it? What the monetary funds received, especially transferred by LLC "Splin", were used for?
- Whether Lototsky and Chekanov were informed about the decisions of the meeting of November 24, 2004, if so then when exactly, in what manner and who did it?
- Whether he was on the territory of the Russian Federation on February 1, 2005, on February 3, 2005 and on February 14, 2005, if so then with what aim did he come and what exact places did he visit?
- Did he address with applications to the Russian law machinery or to the public prosecutor's office in January-February 2005? If so then what was the reason of these applications? How were these applications filled in and presented?
- Whether in March 2005 the Closed JSC "Abitare" received the property for storage? If so then what it was exactly, in what quantity and who received it for storage, where is this property now?
- When did he visit the Russian Federation (RF) for the last time, with what aim and where exactly did he go?
- Whether he can prove his evidence by a document, if so then by what documents he can do it and whether he has them in possession (certified copies of the documents, presented by F. Newman should be added to his testifying)?


3.       To determine the real location of Steven Tatik, the citizen of the USA, and to interrogate him as a witness, asking him without fail the following questions:
- Since when has he been the founder of the company "Cross Ocean Trading" (125-10 Oueens Boulvard, Kew Gardens, New York 11415) as well as the founder of the company "AM-TAK Importes, Inc." (address: 125-10 Oueens Boulvard, Kew Gardens, New York 11415, USA; registered by the Department of State in New York state, Quins county on June 3, 1991, in what circumstances did he become the founder? What companies were founded by the present companies?
- Is he acquainted with Grigory Leonidovich Rabinovich, what are their relations? In what circumstances did G.L. Rabinovich cease to be the stockholder of the Closed JSC "Abitare" and of other companies?
- What activities are directly executed by the present society, companies as well as other companies, founded by the company "Cross Ocean Trading" and the corporation "AM-TAK Importers"?
- Who are (were) the representatives and the directors of the mentioned companies?
- Whether on November 24, 2004 there were extraordinary general meetings of the stockholders of the Closed JSC "Abitare" or of other companies, if so then where exactly did they take place, who was the initiator of these meetings and when did it happen, what were the reasons for such meetings and what was the order of the day, who was in charge of the meetings organization, who determined the place of the meetings (why did the meetings, if they really happened, take place in the USA); when and in what way were other stockholders informed and who did it, who made reports of the proceedings;

25

- Who possesses the originals of the documents, that reflect the way in which the stockholders' meetings were carried out, and where are they now as well as the documents that compose the stockholders' register system? Whether the Closed JSC "Abitare" and other companies have the registrar?
- Does he know Sergey Evgenievich Filippov, if so then when and in what circumstances did they get acquainted? What relation does Filippov bear to the Closed JSC "Abitare"?
- Since when has he known Oleg Vitalievich Lototsky and Marat Vladislavovich Chekanov, what are (were) their positions and their duties? Whether Lototsky and Chekanov were given the powers of attorney, including the right to manage the property of the Closed JSC "Abitare"? If so then when were they given, for what period and who did it? Whether these powers of attorney were withdrawn, if so then when, in what manner did it happen and who did it?
- Does he know Renat Ryashidovich Taktashev, the citizen of the Russian Federation, if so then when, where and in what circumstances did they get acquainted?
- What does he know about the circumstances in which the Closed JSC "Abitare" in the person of O.V. Lototsky made the contract with the company "Leyton Commerce LTD" in the person of its director-general R.R. Taktashev? When did he get to know about the mentioned contract? Who made the decision about making of that contract? What were the circumstances of that contract execution? How much property, when exactly and for what amount of money was sold, where was it? What the monetary funds received, especially transferred by LLC "Splin", were used for?
- Whether Lototsky and Chekanov were informed about the decisions of the meeting of November 24, 2004, if so then when exactly, in what manner and who did it?
- Did F. Newman address with applications to the Russian law machinery or to the public prosecutor's office in January-February 2005? If so then what was the reason of these applications? How were these applications filled in and presented?
- Whether in March 2005 the Closed JSC "Abitare" received the property for storage? If so then what it was exactly, in what quantity and who received it for storage, where is this property now?
- F. Newman and he himself, when did they visit the Russian Federation (RF) for the last time, with what aim?
- Whether he can prove his evidence by a document, if so then by what documents he can do it and whether he has them in possession (certified copies of the documents, presented by S. Tatik should be added to his testifying)?

4.    To determine whether Frank Newman left the territory of the United States of America on February 1, 2005, February 3, 2005, February 14, 2005 and if so then where exactly did he go? When did he visit the Russian Federation for the last time?

5.    to determine whether on February 23, 2005, in the city of New York, USA, Mark B. Rekhtman, the notary public, drew up the power of attorney for F. Newman, the president of the Closed JSC "Abitare" about the appointment of Sergey Evgenievich Filippov as the representative of the Company in all establishments, enterprises, organizations, with execution of all necessary actions for the sake of the company, among which he can manage the property of the company and to ask for the copy of the mentioned power of attorney.

6.    to determine whether the official status, plenary powers and the signature of Mark B. Rekhtman, the notary public, were confirmed and certified with the signature of the Head of the County Chancellery and the secretary of the Supreme Court of the New York state in New York County -- Norman Gudman. Whether Gudman signed the appostille that was certified on February 28, 2005 by James Bizarri, the deputy secretary of the New York state for special questions.

Before the beginning of the interrogation as a witness we ask you to inform F. Newman and S. Tatik about the rights and responsibilities according to the Article 56 of the Criminal-Procedure Code of the Russian Federation (hereinafter CPC RF) and to warn them about the responsibility for the deliberately false testifying according to the Article 307 of CC RF as well as the responsibility for refusal of testifying according to the Article 308 of CC RF and about the responsibility for divulgence of the preliminary investigation data according to the Article 310 of CC RF, only if it doesn't contradict the legislation of the United States of America (supplement № 3). We ask you to draw the evidence in written form with the signatures of the interrogated persons as well as of the person who carried out the interrogation.

The list of the questions, that is given and should be determined, is not exhaustive. During the application execution the other questions, which are very important for the criminal case investigation, can appear. In view of it we ask the executor of the mentioned application to inform the Investigative part attached to CD of MIA of Russia in the Central federal district through the channels of the National Bureau of Interpol immediately.

The information, given in the present application is confidential and it is assigned only for administrative use.

We ask you to send the materials as well as the intelligence as soon as possible to the address: 127254, the city of Moscow, 8A Rustaveli Street, the Investigative part attached to the Chief Department of MIA of Russia in the Central federal district, to the senior investigator K.V. Nikolaev, phone: +74956197966, fax: +74956198011. In the case of delay or impossibility of this application execution, we ask you to inform us about the circumstances, preventing it.

The Investigative part attached to the CD of MIA of Russia in the Central federal district thank you in advance for our co-operation in this case and taking an opportunity we want to assure you in our great respect and readiness to render similar legal assistance in the case of the correspondent applications.

Supplements:
- supplement № 1- the copy of the decision made by the extraordinary general meeting of the stockholders of the Closed JSC "Abitare" of November 24, 2004 in 2 sheets;
- supplement № 2 - the copy of the power of attorney of February 23, 2005 in 10 sheets;
- supplement №3 – extracts from the CPC RF and CC RF in 8 sheets.

The Senior Investigator of the Investigative part attached to
the Chief Department of MIA of Russia in the Central federal district
Justice captain                                    (sgd)                         K.V. Nikolaev

**DECISION**
**made by the extraordinary general meeting of the stockholders**
**of the Closed Joint Stock Company "Abitare"**

| | |
|---|---|
| Firm-name of the company in full: | the Closed Joint Stock Company "Abitare" |
| Residence of the Company: | 25\20 Tschepkin Street, the city of Moscow, 129090 |
| Place of the meeting: | 125-10 Queens Boulvard, Kew Gardens, New York 11415, USA |
| The meeting type: | extraordinary general meeting of the stockholders |
| The meeting form: | co-presence |
| Date of the general meeting: | November 24, 2004 |
| Start of the general meeting: | 13 h. 00 m. |
| End of the meeting: | 14 h. 10 m. |

The whole society emitted and distributed 100 (one hundred) items of the ordinary nominal non-documentary stock.

The following legal entities are the stockholders:

- The corporation "AM-TAK Importes, Inc." - registered by the Department of State in New York state (USA) on June 3, 1991 with the registration number: 910603000477 which on the grounds of the property law possesses 70 (seventy) items of the ordinary nominal non-documentary stock of the Company that is 70 % (seventy) of the whole number of the distributed stock and 70 % (seventy) of the votes during the general meeting of the stockholders.
- The company "Contral" - registered by the State Secretary of the corporation department in Delaware state, on April 17, 1998 with the registration number: 981147375-2885406 - which on the grounds of the property law possesses 15 (fifteen) items of the ordinary nominal non-documentary stock of the Company that is 15 % (fifteen) of the whole number of the distributed stock and 15 % (fifteen) of the votes during the general meeting of the stockholders.
- Limited Liability Company "M-Light" - which on the grounds of the property law possesses 15 (fifteen) items of the ordinary nominal non-documentary stock of the Company that is 15 % (fifteen) of the whole number of the distributed stock and 15 % (fifteen) of the votes during the general meeting of the stockholders.

Present at the meeting:
- Mr. Frank Newman, the president of the corporation, for the sake of the corporation "AM-TAK Importes, Inc."

At the meeting the stockholders, possessing in the aggregate 70 % (seventy) of the votes at the general meeting of the stockholders of the Company, are present. The other stockholders were informed about the date and the place of the meeting properly and in time.

There is a quorum, according to the paragraph 13.3 of the Charter of the Company, the meeting is authorized to make decisions on the questions of the agenda in such a membership.

THE AGENDA
4. About the President of the Company.
5. About the representatives of the Company on the territory of the Russian Federation.
6. About the stockholders' register.

The copy is true. (signed)        January 26, 2005        15.10

Stamp:    The copy is true.
          The investigator of IP IC attached to MIA of Russia in the CFD

According to the questions the following decision were made:

According to the first question it was the following decision was made:
"To confirm the plenary powers of Frank Newman as the President of the Closed Joint Stock Company "Abitare"

According to the second question it was the following decision was made:
"To cease (to terminate the validity) all the powers of attorney, given to O.V. Lototsky, the vice-president of the Company
To cease (to terminate the validity) all the powers of attorney, given to M.V. Chekanov
To dismiss O.V. Lototsky from the position of the vice-president of the Closed Joint Stock Company "Abitare" on the grounds of the actions which are incompatible with his work status and to think that he finished executing his responsibilities as the vice-president of the Company from the date of the present decision".

According to the third question it was the following decision was made:
"To charge Frank Newman, the President of the Closed Joint Stock Company "Abitare", with the delivery of the company stockholders' register to the professional member of the equity market who has the necessary license on the territory of the Russian Federation for directing of the stockholders' register system.
To give to Frank Newman, the President of the Closed Joint Stock Company "Abitare", the right to choose the person who will direct the register."

The decision drawn up and signed on November 24, 2004

For the sake of the Corporation "AM-TAK Importes, Inc."
The President of the Corporation
The Chairman of
The extraordinary general meeting of the stockholders of
The Closed JSC "Abitare"                    (sgd)              Frank Newman

The copy is true. (signed)        January 26, 2005        15.10

Stamp:    The copy is true.
          The investigator of IP IC attached to MIA of Russia in the CFD

**Article 56 of the Criminal-Procedure Code of the Russian Federation (The Witness)**

(in ref. of Federal Law of the Russian Federation of December 28, 2004)

1. Seen as a witness shall be the person who may be aware of certain circumstances of importance to the investigation and to the resolution of a criminal case, and who is summoned for giving evidence;

2. The summons and the interrogation of witnesses shall be performed in accordance with the procedure, laid down by Articles 187-191 of the present Code.

3. Not subject to an interrogation as witnesses shall be:

1) a judge and the juror - about circumstances of the case, which have become known to them in connection with their participation in the procedure on the given criminal case;

2) a lawyer, the counsel for the defence of the suspect and of the accused - about the circumstances, which have become known to him in connection with applying to him/her for legal aid or in connection with rendering it;

3) a lawyer - about the circumstances, which have become known to him in connection with rendering legal advice;

4) a priest - about the circumstances, which he has learned from the confession;

5) a member of the Federation Council, a Deputy of the State Duma without their consent - about the circumstances, which have become known to them in connection with their discharge of their powers.

4. A witness shall have the right:

1) to refuse to testify against himself, his (her) spouse and other close relatives, whose circle is delineated by Item 4 of Article 5 of the present Code. If the witness consents to furnish evidence, he shall be warned that his testimony may be used as the proof in the criminal case, even if he subsequently renounces them;

2) to give evidence in his native tongue or in the language, of which he has a good command;

3) to make use of an interpreter's services free of charge;

4) to enter a recusation against the interpreter, taking part in his interrogation;

5) to enter petitions and file complaints against the actions (the lack of action) and decisions of the inquirer, the investigator and the prosecutor, or of the court;

6) to come to an interrogation with a lawyer, in conformity with the fifth part of Article 189 of the present Code;

7) to make a request for the application of the measures of security, stipulated by the third part of Article 11 of the present Code.

5. The witness cannot be forcibly subjected to the court examination or to a personal examination, with the exception of the cases, stipulated by the first part of Article 179 of the present Code.

6. The witness shall have no right:

1) to evade the attendance at the summons of the inquirer, the investigator or the prosecutor, or the appearance, upon summons, to the court;

2) to give deliberately false evidence or to refuse to give evidence;

3) to disclose the data of the preliminary investigation, which he has learned in connection with his participation in the proceedings on the criminal case, if he was warned to this effect in advance in accordance with the order, established by Article 161 of the present Code.

7. If he fails to appear upon summons without serious reasons, the witness may be brought along under coercion.

8. For giving a deliberately false evidence or for the refusal to give evidence, the witness shall be held responsible in accordance with Articles 307 and 308 of the Criminal Code of the Russian Federation.

9. For the divulgence of the data of the preliminary investigation, the witness shall be held liable in conformity with Article 310 of the Criminal Code of the Russian Federation.

**Article 164 of the Criminal-Procedure Code of the Russian Federation (General Rules for Conducting Investigative Actions)**

(in ref. of Federal Law of the Russian Federation of December 28, 2004)

1. The investigative actions, stipulated by Articles 178, part 3, 179, 182 and 183 of the present Code, shall be conducted on the ground of the investigator's resolution.

2. In the cases envisaged by Items 4-9 and 11 of the second part of Article 29 of the present Code, investigative actions shall be carried out on the grounds of a court decision.

3. Conducting an investigative action in night time shall be inadmissible, with the exception of urgent cases.

4. The application of violence, threats and other illegal actions in conducting investigative actions, or the creation of a threat to the life and health of those participating in them, shall be prohibited.

5. While drawing into the participation in investigative actions the participants in the criminal court proceedings, pointed out in Chapters 6-8 of the present Code, the investigator shall ascertain their person and explain to them their rights and responsibility, as well as the procedure for the performance of the corresponding investigative action. If in the performance of the investigative action is taking part the victim, witness, specialist, expert or an interpreter, he shall also be warned about the responsibility, stipulated by Articles 307 and 308 of the Criminal Code of the Russian Federation.

6. In conducting investigative actions may be applied technical devices and methods for the detection, fixation and seizure of the traces of the crime and of the demonstrative proof.

7. The investigator shall have the right to draw into the investigative actions an official from the body engaged in the operational-search activity, about which the corresponding entry shall be made into the protocol.

8. In the course of the performance of an investigative, a protocol shall be kept in conformity with Article 166 of the present Code.

**Article 166 of the Criminal-Procedure Code of the Russian Federation (Protocol of an Investigative Action)**

(in ref. of Federal Law of the Russian Federation of December 28, 2004)

1. The protocol of an investigative action shall be compiled in the course of the investigative action or directly after completing it.

2. The protocol may be written by hand or made with the use of technical devices. During the performance of an investigative action may also be applied short-hand, photography, cinema shooting and audio and video recording. Short-hand and verbatim reports, photographic negatives and photographs, as well as audio and video recordings shall be kept in the criminal case file.

3. In the protocol shall be pointed out:

1) the place and the date of the performance of the investigative action, and the time of its start and its end with the precision of up to one minute;

2) the post, surname and the initials of the person who has compiled the protocol;

3) the surname, name and patronymic of every person who has taken part in the investigative action, and if necessary, also his address and other data on these persons.

4. In the protocol shall be described the procedural actions in the order in which they were performed and the circumstances of importance for the given criminal case, revealed during their performance; the statements of the persons, who have taken part in the investigative action, shall also be cited.

5. In the protocol it shall also be indicated the technical devices applied when performing the investigative action, the terms and the order of their use, the objects towards which these devices were applied, and the obtained results. In the protocol it shall be pointed out that the persons, who have taken part in the investigative action, were warned in advance about the application of the technical devices in the performance of the investigative action.

6. The protocol shall be presented for getting acquainted with it to all the persons who have taken part in the investigative action. To the said persons shall be explained their right to make remarks on its extension and specification which shall be entered into the protocol. All the entered remarks on an extension and the specification of the protocol shall be agreed with, and certified by the signatures of these persons.

7. The protocol shall be signed by the investigator and by the persons who have taken part in the investigative action.

8. To the protocol shall be enclosed the photographic negatives and photographs, cinema films, slides and phonograms of interrogation, video recording cassettes, computer information media, the draughts, maps and schemes, as well as the moulds and the imprints of the traces, made during the performance of the investigative action.

9. If it is necessary to provide for the safety of the victim, of his representative and witness, of their close relatives, relations and their near and dear persons, the investigator shall have the right not to supply the data on these persons in the protocol of the investigative action, in which the victim and his representative or witness have taken part. In this case, the investigator with the consent of the public prosecutor shall pass the resolution, in which the reasons for the adoption of the decision on keeping a secret about these data, the pseudonym of the participant in the investigative action and a sample of his signature which he will be using in the protocols of the investigative actions performed with his participation. The resolution shall be put into an envelope, which shall be sealed and enclosed to the criminal case file.

10. The protocol shall also contain an entry on the explanation to the participants in the investigative action, in conformity with the present Code, of their rights and responsibility, and of the procedure for the performance of the investigative action, which shall be certified with the signatures of the participants in the investigative actions.

**Article 167 of the Criminal-Procedure Code of the Russian Federation (Certification of the Fact of Refusal to Sign or Impossibility to Sign the Protocol of an Investigative Action)**

(in ref. of Federal Law of the Russian Federation of December 28, 2004)

1. If the suspect, the accused, the victim or another person, participating in an investigative action, refuses to sign the protocol of the investigative action, the investigator shall enter into it a corresponding entry, which shall be certified with the investigator's signature, as well as with the signatures of the counsel for the defence, of the legal representative or of the representative, and of the attesting witnesses, if they are taking part in the investigative action.

2. To the person, who has refused to sign the protocol, shall be provided an opportunity to explain the reasons for the refusal, which is to be entered into the given protocol.

3. If the suspect, the accused, the victim or the witness cannot sign the protocol because of his physical defects or on account of the poor state of his health, this person shall be made acquainted with the text of the protocol in the presence of the counsel for the defence, of the legal representative, of the representative or of the attesting witnesses, who shall confirm with their signatures the content of the protocol and the fact of the impossibility to sign it.

**Article 189 of the Criminal-Procedure Code of the Russian Federation (General Rules for Conducting an Interrogation)**

(in ref. of Federal Law of the Russian Federation of December 28, 2004)

1. Before an interrogation, the investigator shall fulfill the demands, stipulated by the fifth part of Article 164 of the present Code. If the investigator begins to doubt whether the interrogated person has a good command of the language in which the proceedings on the criminal case is conducted, he shall be obliged to find out in what language the interrogated person would prefer to give evidence.

2. It is inadmissible to give the leading questions to the interrogated person. Apart from this the investigator is free to select any tactics of interrogation.

3. The person under interrogation shall have the right to make use of documents and notes.

4. At the initiative of the investigator or at the request of the interrogated person, in the course of the interrogation may be performed the photographing, the audio and video recording and the cinema shooting, the materials of which shall be kept in the criminal case and shall be sealed after completing the preliminary investigation.

5. If the witness has come to an interrogation with a lawyer he has invited for giving him legal advice, the lawyer shall be present at the interrogation, and shall enjoy the rights provided for by Part Two of Article 53 of this Code. After the end of the interrogation, the lawyer shall have the right to make statements on the violations of the rights and the lawful interests of the witness. These statements shall be entered into the protocol of the interrogation.

33

**Article 190 of the Criminal-Procedure Code of the Russian Federation (Protocol of an Interrogation)**

(in ref. of Federal Law of the Russian Federation of December 28, 2004)

1. The process and the results of an interrogation shall be reflected in a protocol to be compiled in conformity with Articles 166 and 167 of the present Code.

2. The testimony of the interrogated person shall be written down as rendered in the first person and, if possible, word for word. The questions and the answers to them shall be written down in that sequence, which was observed in the course of the interrogation. Into the protocol shall be entered all the questions, including those rejected by the investigator and those to which the interrogated person has refused to answer, with an indication of the reasons behind the rejection or the refusal.

3. If in the course of the interrogation, the witness was presented with demonstrative proof and documents, protocols of other investigative actions or materials of audio and (or) video recording or cinema shooting of the investigative actions, the corresponding entry shall be made about this in the protocol of the interrogation. In the protocol shall also be reflected the evidence of the interrogated person, which he gave after this.

4. If in the course of the interrogation were carried out the photographing, the audio and (or) video recording and the cinema shooting, the protocol shall also contain:

1) an entry on the performance of the photographing, the audio and (or) video recording and the cinema shooting;

2) information on the technical devices, on the conditions of the photographing, of the audio and (or) video recording and of the cinema shooting, and on the fact of suspending the audio and (or) video recording and the cinema shooting, as well as on the reason for, and on the duration of the suspension of these;

3) the applications of the interrogated person concerning the performance of the photographing, of the audio and (or) video recording and of the cinema shooting;

4) the signatures of the interrogated person and of the investigator, certifying the correctness of the protocol.

5. The interrogated person shall have the right in the course of the interrogation to prepare maps, drafts, drawings and diagrams, which shall be enclosed to the protocol, about which the corresponding note shall be made in it.

6. After the end of the interrogation, the protocol shall be submitted to the interrogated person for reading, or it shall be read for him at his request by the investigator, about which the corresponding note shall be made in the protocol. The interrogated person's petition for an addition to be made to, and on the specification of the protocol shall by all means be satisfied.

7. In the protocol shall be named all the persons, who have participated in the interrogation. Every one of them shall be obliged to sign the protocol, as well as all the addenda and the specifications made in it.

8. The interrogated person shall certify the fact of getting acquainted with the evidence and the correctness of its recording with his signature, to be put at the end of the protocol. The interrogated person shall also sign every sheet of the protocol.

9. Refusal to sign the protocol of the interrogation or the impossibility to sign it on the part of the persons who have taken part in the interrogation, shall be certified in the order, established by Article 167 of the present Code.

34

**Article 307 of the Criminal Code of the Russian Federation (Knowingly False Testimony, Opinion of an Expert or Specialist, or Mistranslation)**

(in ref. of Federal Law of the Russian Federation of January 15, 2004)

1. Knowingly false testimony of a witness, a victim or an expert's opinion or testimony, evidence of a specialist and also knowing mistranslation in court, or in a preliminary investigation,

shall be punishable by a fine in the amount up to 80 thousand roubles, or in the amount of the wage or salary, or any other income of the convicted person for a period up to six months, or by compulsory works for a term of 180 to 240 hours, or by corrective labour for a term of up to two years, or by arrest for a term of up to three months.

2. The same acts, joined with the accusation of a person of the commission of a grave or especially grave crime,

shall be punishable by deprivation of liberty for a term of up to five years.

Note: A witness, victim, expert, specialist, or interpreter shall be relieved from criminal responsibility if they of their own free will have stated that their testimony or opinion was false, or that interpretation was knowingly given wrongly in the course of an inquest, preliminary investigation, or court hearing before the criminal sentencing or decision making by the court.

**Article 308 of the Criminal Code of the Russian Federation (Refusal of a Witness or a Victim to Give Testimony)**

(in ref. of Federal Law of the Russian Federation of January 15, 2004)

Refusal of a witness or a victim to give testimony

shall be punishable by a fine in the amount up to 40 thousand roubles, or in the amount of the wage or salary, or any other income of convicted person for a period up to three months, or by compulsory works for a term of 120 to 180 hours, or by corrective labour for a term of up to one year, or by arrest for a term of up to three months.

Note: A person shall not be liable to criminal responsibility for the refusal to give testimony against himself, his spouse, or his close relatives.

**Article 310 of the Criminal Code of the Russian Federation (Disclosure of the Data of a Preliminary Investigation)**

(in ref. of Federal Law of the Russian Federation of January 15, 2004)

Disclosure of the data of a preliminary investigation, by a person who is warned in the statutory manner that it is impermissible to disclose this information, if this act has been committed without the consent of a procurator, investigator, or a person conducting inquests,

shall be punishable by a fine in the amount up to 80 thousand roubles, or in the account of the wage or salary, or any other income of the convicted person for a period up to six months, or by corrective labour for a term of up to two years, or by arrest for a term of up to three months.

Translated by                    N.S. Ibraguimova
Перевод                          Н.С. Ибрагимова

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST     )
FROM RUSSIA              )
IN THE MATTER OF        )  Misc No. 07-
O.V. LOTOTSKY          )

<u>ORDER</u>

Upon application of the United States of America; and upon examination of a letter of request from Russia whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Russia and the Court being fully informed in the premises, it is hereby

**ORDERED,** pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Russian authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Russia, which procedures may be specified in the request or provided by the Russian authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Russian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2007.


_____
United States District Court Judge